Alan S. Lewis
Madelyn K. White
CARTER LEDYARD & MILBURN LLP
28 Liberty Street, 41st Floor
New York, NY 10005
(917) 533-2524
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------X

UNITED STATES OF AMERICA,

Criminal No. 18-105

-against-

ALEXANDER DAVIS,

Defendant.

-------------------------------------------------------X

**DEFENDANT'S POST HEARING**
**REPLY MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 2

I. Dr. Dattilio's Performance During the Daubert Hearing Was Not a Reason Not to Call Him During the Trial ........ 2

II. There Was No Strategic Reason Not to Call Dr. Dattilio ........ 6

III. There Is a Reasonable Probability that Dr. Dattilio's Testimony Would Have Resulted in a Different Outcome ........ 8

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Elias v. Superintendent Fayette SCI*,
774 F. App'x 745 (3d Cir. 2019) ....................7

*Husok v. Capozza*,
2024 U.S. Dist. LEXIS 119332 (W.D. Pa. June 10, 2024) ....................7

*Jacobs v. Horn*,
395 F.3d 92 (3d Cir. 2005) ....................8

*McAleese v. Mazurkiewicz*,
1 F.3d 159 (3d Cir. 1993) ....................7

*Strickland v. Washington*,
466 U.S. 668 (1984)....................9

The government's post-hearing memorandum of law largely avoids the two related questions that are central to the merit of Mr. Davis's 2255 petition: (1) was there a valid strategic reason for failing to elicit the evidence, favorable to Mr. Davis and which defense counsel had already promised to the jury—that in the expert opinion of Dr. Dattilio, Mr. Davis is *not* a pedophile; and (2) as a corollary, although Dr. Dattilio appeared to struggle during an *unanticipated* Daubert hearing for which he had *not been prepared for by counsel*, was there any identifiable downside to the defense if it called Dr. Dattilio thereafter, at trial, *after actually preparing him for his testimony*. Instead of facing these questions head on, the government spends the first seventeen pages of its opposition memo discussing the other evidence adduced during Mr. Davis's trial, evidence which the government had argued during the evidentiary hearing was irrelevant and had no bearing on whether the failure to call Dr. Dattilio constituted ineffective assistance of counsel. *See*, *e.g.* 6/10/25 Tr. at 11 (ECF #117). The reason for this is obvious: there was no actual identifiable downside to calling Dr. Dattilio at trial and by failing to call him *after previewing his testimony to the jury*, Mr. Davis's trial counsel was ineffective.

## ARGUMENT

### I. Dr. Dattilio's Performance During the Daubert Hearing Was Not a Reason Not to Call Him During the Trial

In defending the trial defense team's decision to not call Dr. Dattilio as "strategic," the government points to four purported flaws identified by defense counsel with Dr. Dattilio's testimony. *See* Government's Response Brief (ECF #120) ("Opp.") at 21. However, the government ignores that these flaws could have either been dealt with effectively with better preparation (which the defense team did not even attempt) or were not mitigated by keeping Dr. Dattilio's favorable testimony off of the witness stand (reinforcing that there was therefore no downside to calling him). Accordingly, there was no reason not to call Dr. Dattilio even though he struggled somewhat during the Daubert hearing.

The first issue the government points to as purportedly supporting the decision not to call Dr. Dattilio was that at the Daubert hearing, he was "unfamiliar with the items he enumerated in his report" for the bases of his conclusion. *See* Opp. at 21; 25. But this completely ignores the fact that on the day of the Daubert hearing, Dr. Dattilio did not expect to testify, and was tired and unprepared. *See*, *e.g.* 6/10/25 Tr. at 90; 9/27/18 Tr. at 346.[1] While the government writes in its post-

[1] Page references for the trial transcripts (9/27/18 Tr.; 9/28/18 Tr.; and 10/3/18 Tr.) are to the numbers in the upper right of the copies attached to the February 3, 2026 Declaration of Alan S. Lewis (ECF #119).

hearing brief that Dr. Dattilio's testimony occurred when "the defense, in seeking to introduce the expert opinion of Dr. Frank Dattilio, called him to testify at a Daubert hearing," *see* Opp. at 18, this was not the case and instead the defense was not expecting Dr. Dattilio to testify on the night he did so. Indeed, prior to the start of the Daubert hearing, defense counsel stated that she "thought the Court had made a ruling already on the admissibility of Dr. Dattilio indicating that, that the testimony went more for the, the weight, and that the Court could instruct the jury regarding expert testimony." 9/27/18 Tr. at 307; *accord* 9/27/18 Tr. at 346 (explaining that Dr. Dattilio "was coming by tonight to meet with [defense counsel], and we were testifying tomorrow.").

Had defense counsel met with Dr. Dattilio and prepared him to testify at trial, there is no reason to believe that, *as a trial witness*, he would have been unfamiliar with the bases for his opinion. Dattilio could have been prepared to respond to attempts to impeach him by explaining the substantial amount of time that had elapsed between when he prepared his report and when he testified at the Daubert hearing. Defense counsel did not even attempt to meet with Dr. Dattilio after the Daubert hearing to evaluate if he could be rehabilitated and presented as a credible witness. *See* 6/10/25 Tr. at 91; 124-25.

The second purported flaw identified by the government was the extent to which Dattilio relied on information he had received from Mr. Davis, including

that when Mr. Davis called the phone number at issue he heard an adult voice on the answering message. *See* Opp. at 21. But Mr. Davis's credibility was already in play, including on this very point, since he testified on his own behalf and testified during the trial that he had called the number and heard an adult voice. *See* 9/28/18 Tr. at 69.

Relatedly, the government claims that Dr. Dattilio's testimony would have harmed the defense and was "laughable" because he relied entirely on Mr. Davis's "self-serving statements." *See* Opp. at 26. But this ignores that Dr. Dattilio testified that the methods he used "have good reliability and validity," and been subject to peer review, *see* 9/27/18 Tr. at 310-11, and that his conclusions were "based on the testing, based on the interview, and based on the review of records and corroboration – and corroborative interviews with the family members, wife." 9/27/18 Tr. at 313. While the government was free to cross-examine Dr. Dattilio as to evidence the government believed he should have considered, there was no reason to believe that Dr. Dattilio could not have been prepared to respond to the criticism with sufficient preparation after the Daubert hearing. Put simply, there was no downside to calling Dr. Dattilio to testify even if his testimony was dependent on Mr. Davis's credibility because even without Dr. Dattilio, the defense case rested on Mr. Davis's testimony on his own behalf.

Third, the government claims that it was reasonable not to call Dr. Dattilio since he mentioned a polygraph exam during the Daubert hearing even though the results of that exam were inadmissible and not mentioned in his report. *See* Opp. at 21. But again, this testimony could have been partially explained by better preparation. Trial counsel could have met with Dr. Dattilio, helped him remember the sources of information that he actually relied on to prepare his report, and then could have had him testify at trial about the sources he actually relied on to reach his conclusions. If the issue of the polygraph had come up in front of the jury, it could have been explained by the fact that Dr. Dattilio had not reviewed his report recently prior to testifying at the surprise (to him and defense counsel) Daubert hearing.

Finally, the government claims that it was reasonable to not call Dr. Dattilio since he did not define the term pedophile in his report and his efforts to do so at the Daubert hearing were, in Ms. Meehan's words "a disaster." *See* Opp. at 21. But again, while Dr. Dattilio struggled during the Daubert hearing when he was tired and unprepared, he is a very experienced expert witness and this could likely have been dealt with by better preparation. Defense counsel's failure to even attempt to prepare Dr. Dattilio to see if he could still testify following the Daubert hearing constitutes ineffective assistance.

## II. There Was No Strategic Reason Not to Call Dr. Dattilio

The government claims that Mr. Davis's Section 2255 motion rests on a "scenario where Dr. Dattilio's trial testimony could have been strong and unimpeachable," *see* Opp. at 26, but this overstates the argument that Davis has made in his petition as likewise misstates the legal standard for evaluating his ineffectiveness claim. The government presents no authority that it cannot be ineffective to call a witness unless his testimony is "unimpeachable" and there is no such authority. Moreover, not only has the government exaggerated the problems raised by Dr. Dattilio's Daubert testimony, but even with those potential challenges, there was no strategic reason not to call Dr. Dattilio because the defense depended so heavily on Dr. Dattilio's expected testimony and the jury had been told that they were going to hear from him.

This point merits emphasis: the government completely fails to mention that the defense team *had told the jury that they would be hearing from Dr. Dattilio*. While the government claims that Mr. Davis did not need Dr. Dattilio's testimony, because "the defense already had the benefit of expert corroboration," *see* Opp. at 26, this completely ignores that the defense had told the jury that Mr. Davis "received a full psychosexual evaluation by a doctor…. By a psychologist. You're going to hear from that psychologist and you're going to have all those results."

9/27/18 Tr. at 71. After promising the jury that it would hear that evidence, it was incredibly damaging to Mr. Davis's defense to not provide it.

In defending defense counsel's decision to not call Dr. Dattilio, the government cites a handful of cases which simply stand for the proposition that generally it is within counsel's discretion to choose which witnesses to call. *See* Opp. at 24. But none of these cases involved a case, such as here, where counsel tells the jury that they will be hearing from a particular witness and then fails to call that witness. Moreover, it is widely recognized that the failure to follow through on a promise to the jury that they will hear particular evidence can constitute ineffective assistance of counsel. *See*, *e.g. McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993) ("The failure of counsel to produce evidence which he promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel."); *Elias v. Superintendent Fayette SCI*, 774 F. App'x 745, 751 (3d Cir. 2019) ("a failure by counsel to produce promised evidence to the jury can support a claim of ineffective assistance"); *Husok v. Capozza*, 2024 U.S. Dist. LEXIS 119332 (W.D. Pa. June 10, 2024). While the failure to provide promised testimony can be excused due to changed circumstances, for the reasons set forth above and in Mr. Davis's initial post-hearing memorandum, the changed circumstances invoked here—Dr. Dattilio's testimony during the Daubert hearing—was not a

material and unalterable changed circumstance. That is because of the possibility, which defense counsel failed to explore, that a combination of better witness preparation and argument to the jury could have given the defense significant potential upside from Dr. Dattilio's trial testimony without incurring any meaningful corresponding harm to the defense.

Without Dr. Dattilio's testimony on the topic of whether Mr. Davis had a sexual interest in minors, the only evidence the jury had as to whether Mr. Davis had a sexual interest in minors was Mr. Davis's own testimony—but as the defendant, Mr. Davis was easy to portray as an interested and therefore heavily biased or unreliable witness. Dr. Dattilio testified at the Daubert hearing that he would offer evidence that "there is no indication that [Mr. Davis] was pursuing pornography of anyone under the age of 18. There was no indication that he had made any overtures or surrounded himself with anyone under that age." 9/27/18 Tr. at 325. This testimony could have only helped Mr. Davis's defense. The failure to provide that testimony to the jury after the jury had been led to believe it would be offered was profoundly damaging.

## III. There Is a Reasonable Probability that Dr. Dattilio's Testimony Would Have Resulted in a Different Outcome

To show prejudice under the *Strickland* test, Mr. Davis must only show "'a probability sufficient to undermine confidence in the outcome.'" *Jacobs v. Horn*,

395 F.3d 92, 105 (3d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984)). The government does not even argue that Mr. Davis has not met this test, and instead simply asserts that Dr. Dattilio's testimony would have harmed the defense. *See*. Opp. at 26.

However, as set forth above, and in Mr. Davis's opening memorandum of law, Dr. Dattilio is a widely respected psychologist and experienced trial witness. He was prepared to testify that Mr. Davis did not have a sexual interest in minors. Given that Mr. Davis's defense rested on convincing the jury that he thought the person he was traveling to meet was an adult, there is a sufficient probability to "undermine confidence" that the verdict would have been the same had the jury heard from Dr. Dattilio.

## CONCLUSION

After having promised the jury that they would hear the results of a full psychosexual evaluation by a psychologist, defense counsel unilaterally abandoned the testimony of that witness after he stumbled during an unexpected hearing for which the witness was not prepared. Counsel made this decision without even trying to rehabilitate the witness and without consulting with Mr. Davis. Trial counsel thereby rendered ineffective assistance, and Mr. Davis's petition to vacate

his conviction on the ground of that ineffective assistance of counsel should be granted.

Dated: New York, New York
March 27, 2026

Respectfully submitted,

CARTER LEDYARD & MILBURN LLP

By: _/s/ Alan S. Lewis_
Alan S. Lewis (admitted *pro hac vice*)
Madelyn K. White (admitted *pro hac vice*)
28 Liberty Street, 41st Floor
New York, NY 10005
(917) 533-2524
lewis@clm.com

-and-

SAXTON & STUMP
Mark E. Cedrone (*local counsel*)
123 South Broad Street, Suite 2800
Philadelphia, PA 19109
(267) 665-2080
mec@saxtonstump.com

*Attorneys for Defendant Alexander Davis*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------X

UNITED STATES OF AMERICA,

Criminal No. 18-105

-against-

ALEXANDER DAVIS,

Defendant.

-------------------------------------------------------X

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served this 27th day of March 2026, via the Court's Electronic Case Filing system ("ECF") upon all counsel of record.

*/s/ Alan S. Lewis*
Alan S. Lewis